INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. JOSIE E. BELL.

Decided June 30, 1910.

**1.—Trial—Withdrawal of Issues.**

The fact that much testimony had been introduced upon certain issues raised by the pleadings, but which issues were by the charge of the court subsequently withdrawn from the jury, would not necessarily be cause for reversal. If the testimony is such that a jury of practical and average intelligence could separate that part of it relating to the issue still left for their consideration from that part relating to the issues which had been wihdrawn, an appellant would have no cause of complaint.

**2.—Railroad—Grading Street—Damages—Ordinance.**

A railroad company can not use a city ordinance as a defense in a suit by an abutting property owner for damages resulting from raising the grade of a street, when the ordinance authorizing the work to be done was passed at the instance and for the benefit of the company.

**3.—Same—Abutting Property Owner—Pleading.**

In a suit by an abutting property owner against a railroad company for damages for raising the grade of the street in front of plaintiff's property, thereby impairing the means of ingress to and egress from said property, pleading considered, and held sufficient.

**4.—Same—Damages—Non-expert Testimony.**

It is not necessary that a witness be a real estate expert in order to qualify him to testify as to depreciation in the value of property caused by the construction of railroad tracks, switches, etc., nearby. It is sufficient if the witness has had experience with real estate in the neighborhood and is familiar with the values.

**5.—Trial—Refusal of Witness to Answer.**

A plaintiff having testified that she could not separate the damage to her property (by the construction of a railroad in an adjacent street) from the value of the property, it was not reversible error for the court to refuse to compel her to answer what she would take for said property at the time of the trial, although she had previously testified as to the damage to the property.

### 6.—Charge—Measure of Damage—Error of Omission.

An error in a charge in instructing that the measure of damage to property would be the difference in the value (instead of the market value) of the property before and after it was damaged would be an error of omission, which must be cured by a requested charge.

### 7.—Special Charge—Requisites.

A special charge, in order to require an elaboration of a general charge, should be addressed to the trial court in such form that the particular request would be brought directly and unmistakably to the knowledge of the court. A desired instruction is not properly requested when contained only in a requested instruction which includes other propositions.

### 8.—Railroad—Abutting Property Owner—Remedy.

A property owner is not required to adjust his premises to the new conditions and overcome the damages resulting from the construction of a railroad nearby, instead of resorting to a suit for damages.

### 9.—Same—Measure of Damage—Harmless Error.

The undisputed evidence being to the effect that the values of property in the vicinity of plaintiffs' had constantly increased since and on account of the building of certain railroad terminals nearby, a charge to the jury to find for the defendant railroad company if they believed that plaintiff's property was ·now without reference to the general increase in values, than it would have been had the work complained of not been done, etc., was prejudicial to the plaintiff rather than the defendant, and the defendant could not therefore complain of the use of the word "now."

### 10.—Same—Common Benefits.

Plaintiff's suit being for damages to her property by obstructing the access to the same by raising the grade of the street and increasing the number of railroad tracks thereon, the fact that her property in common with that of all others in the community was benefited by the establishment of a depot and other improvements as a component part of the construction complained of, was irrelevant and immaterial.

### 11.—Same—Limitation.

The statute of limitation will not bar a suit for damages to abutting property by raising the grade of the street and laying ·tracks thereon, when the work complained of lacked substantial completion until within two years of filing the suit.

ON REHEARING.

### 12.—Charge—Alternative Presumed.

A charge to find for the plaintiff for the reduction of value, if any, of her property arising from the causes alleged, was in effect a charge to find for defendant if the jury found no reduction of value.

Appeal from the 61st Judicial District, Harris County. Tried below before Hon. Norman G. Kittrell.

*King & Morris,* general attorneys, and *Wilson, Dabney & Meachum,* for appellant.

*Hutcheson, Campbell & Hutcheson,* for appellee.

JAMES, Chief Justice.—Mrs. Bell's amended petition alleged own-

ership of a lot in Houston, Texas, fronting on Commerce Street; that about August 1, 1905, the defendant company placed in front of said premises on Commerce Street a railroad track and spur which took up said street and a good portion of the sidewalk, and destroyed the ingress and egress which she had theretofore had in front of her property, and that defendant, at about the same time and as a part of said work, raised the grade of the street in front of the property, elevating the same above the level of plaintiff's premises, so that the drainage from said street and railroad track was thrown onto her property and after each rainfall same would be flooded.

Like allegations were made by paragraph IV of the pleading of a side track and spur placed by defendant at the same time and as part of the same work on Austin Street (a side street). Paragraph V alleged that prior to the time defendant placed its roadbed, track and switch on Commerce Street, and its roadbed and spur on Austin Street, her property was dry, well drained and accessible for all purposes; that plaintiff's ingress and egress was free and unobstructed; that her place was a desirable and valuable property bringing the reasonable rental of one hundred dollars a month. Paragraph VI alleged that by reason of such acts the property was greatly damaged and deteriorated in value because undesirable for rental purposes, and had its rental value practically destroyed. Paragraph VII alleged that by reason of said acts her property was depreciated in value ten thousand dollars.

Defendant's answer is very extensive and we may be excused for adopting appellant's own digest of the same, which is in these words: "The defendant pleaded the general issue, limitations, the existence of tracks upon the street, the history, the railroads, its predecessors in title from the year 1889 down, and other defenses, to be set out; and also contended that the elevating of the grade was a matter of the city of Houston, compelled by the city, for which defendant was not liable." A verdict was returned for plaintiff in the sum of $1500.

The court, by its charge, eliminated from the case the issue of water being drained onto or repelled back on the property; also the matter alleged by plaintiff in regard to Austin Street, and expressly confined the jury to, and submitted the case only on, the issue of limitations and the issue of damages to the property by the obstruction of the ingress and egress occasioned by the grade, track and spur on Commerce Street.

It appears that testimony was extensively gone into touching the other issues, and it is a point insisted on by appellant in its brief that the trial lasted several days, that a mass of testimony, not less than half of the whole testimony, of a nature that addressed itself to the emotions and sympathies of the jurors was taken upon the issue of drainage, or flooding of plaintiff's property and the damage thereby sustained; that such issues were not withdrawn nor eliminated until so done by the charge which was after the arguments to the jury, and that, presumably, such testimony had been dwelt upon in the argument, hence it was not practicable to strike out the mass of testimony and a great

part of the pleading, erroneously admitted and sustained, and at the same time insure defendant a fair trial by the jury on the issues that were submitted. It appears that defendant had a number of bills of exceptions to such testimony, seventeen in number, whether good or not, is not material in this connection. It is also insisted in this contention that it was impossible to discriminate in reference to the testimony upon the issues, "there being no estimate in the evidence of the amounts of damages apportionable to the several bases testified to."

Upon this subject our views may readily be stated. We must assume that the jury were men of practical and average intelligence, and, therefore, that they must have understood the charge and its effect upon the issues and testimony.

At the same time if, as claimed, there was nothing in the testimony which enabled the jury to arrive at the damage done the property by reason of the obstructed ingress and egress, or a separation of the testimony was impracticable, then this verdict must have been arrived at otherwise than by proper means and should not be allowed to stand.

An examination of the statement of facts will show that appellant has magnified the difficulties attending the testimony. It appears to us that there was testimony which related solely to the damages sustained by the obstruction of ingress and egress from the road and grading upon Commerce Street, enabling the jury to readily direct themselves to that question.

The claim that the testimony taken on the subject of flooding the property was inflammatory and excited the sympathies and emotions of the jury in favor of plaintiff, and was calculated to lead the jury to excess in measuring the damages on the issue that was submitted, is not well founded if we presume, as we should, that the jury were possessed of ordinary comprehension and if we consider the verdict rendered, which does not bear any indication of the pressure of said influence.

The above views necessitate the overruling of appellant's assignments of error Nos. 1 to 21, 41 to 55, and 59 to 71.

Under assignments 22 to 40 appellant relies on the following proposition of law:

"The elevation of the street was the act of the city, or an act for which the railroad is in no respect liable, and the court erred in permitting matters to go to the jury for recovery because of the elevation of the grade of the street, over the defendant's continuous exceptions, there being no action in that regard against the railroad, and no obligation to put culverts through the elevated street, the shedding of water off the street and the expelling of water back therefrom not being actionable at common law, and the common law not being changed by a statute as to a street."

The point relied on appears to be that the city, by its charter, was vested with the power to "lay out, establish, . . . alter, widen, extend, grade . . . maintain and improve streets," etc., and that the city required the railroad to elevate the grade of this street sixteen

inches in front of plaintiff's property, and this was done and, consequently, defendant having acted in this matter under compulsion, was not liable for the raising of the grade.

It is impossible to conceive that the city would attempt to exercise the power of directing any person or corporation to raise the grade of its street unless it be as a condition to some use the person or corporation desired to make of the street to further its own use. We find here that on the street as it was, defendant already had a single track; that it had undertaken to locate a station and terminals in the vicinity and required a more extensive use of the street to accommodate its tracks for these purposes; that defendant was granted the privilege, and what was required to be done to the street by the ordinance or ordinances granting the privilege were conditions imposed upon and assumed by the defendant in order to acquire the privilege. This is a very different thing from being compelled by the city to raise the grade to accommodate defendant's purposes. It was testified to by Crittenden, defendant's chief engineer, that the said ordinances from the city in regard to the street were gotten for the benefit of the International & G. N. for the purpose of putting in their tracks. And that the original of the ordinances imposed upon defendant, upon the acceptance of the grant or privilege, to hold and save the city harmless from any claims, demands and liabilities whatever that may arise from the exercise by it of the rights and privileges granted.

Mr. Crittenden further testified: "This grade raising and work I did down there under the ordinance was for the benefit of the International & G. N. . . . These grades were gotten for the benefit of the International & G. N. for the purpose of putting their tracks down. . . . We didn't get permission to do that last grade raising in front of Mrs. Bell's property until about June 14th. . . . There was a modification of said ordinance on June 12th. We had to get that so as to allow us to fill a little higher."

It is evident that what was done to this street was done solely by and in the interest of the defendant, and that the fixing of the grade was its own matter. As stated by appellee, "it set in motion municipal functions for its own benefit and to support its private aims." Where a railway company occupies the attitude of one compelled by the city, in the exercise of its powers, to elevate a street grade, there would be reason for holding it not liable. But here there was no compulsion of defendant. It desired the level of the street changed for its own and sole interest, and itself, not the city, carried this into execution. The mere fact that the city gave its consent to defendant changing the grade, would not constitute the work compulsory on defendant. Under our present Constitution the city is liable for damages to property occasioned by it in changing the grade of streets. Cooper v. City of Dallas, 83 Texas, 239. Under the facts of this case the railway company is liable. We, therefore, overrule the proposition, and also the 72d, 73d and 74th assignments of error.

The assignments 56 to 58 are briefed together and under it is a single proposition which does not present clearly any question, but as we make it out, the point, whatever it is, is based on that phase of the case which relates to drainage or overflowing of the property, which, as we have seen, was eliminated.

Under the 75th, 76th and 77th the following proposition is advanced: "The court erred in submitting to the jury that they might grant damages by reason of impairment of access and egress through the existence of the raised grade of the street, no damages being sought in the petition on that ground." We think this is a mistaken view of the amended petition. Paragraph 3 of the pleading stated that the track and spur on Commerce Street destroyed the access which plaintiff had theretofore had to her property, and that defendant, at or about same time and as part of the work of placing said track and spur on said street, raised the grading thereof. In paragraph 4 it is stated "that by reason of such construction above complained of in paragraph 3 the defendant has destroyed the access which plaintiff theretofore enjoyed to and from her property." Paragraph 7 states "That by reason of the obstruction and interference with her ingress and egress to said property and the raising of the grade so as to subject plaintiff's property to overflows, and by reason of the situation which the construction by the defendant company placed plaintiff's premises in, and by reason of the generally injurious effects of said construction as herein alleged, the value of plaintiff's property became depreciated," etc. We think the pleading, properly construed, covered a case for damages to access on account of the entire construction.

The proposition under the 78th and 79th is: "The court erred in that he submitted to the jury to award damages for the existence of the track, switch and spur, that is, for the existence of three tracks in front of plaintiff's property, whereas the petition complained only of a track and spur." In paragraph 3 of the petition it was alleged that defendant placed in front of plaintiff's premises on Commerce Street a railroad track and spur, which track and spur took up and consumed almost the entire street and a good portion of the sidewalk. Paragraph 5 refers to the roadbed, track and switch placed by defendant on Commerce Street. It seems to us that it was evident that plaintiff was complaining of all tracks in front of her property which "took up and consumed almost the entire street," and most of her sidewalk. The assignments are overruled.

The 80th assignment is presented as a proposition, but being no proposition of law, as contemplated by the rules, it is not considered.

The 81st is overruled, as it appears from the statement that plaintiff had had experience with real property in the neighborhood and was familiar with values. It was not necessary for her to be classed as a real estate expert. The court did not commit error in allowing her to testify on the subject of depreciation in value of her property.

The matter which the 82d assignment deals with affords no reason

for reversal of the judgment. Plaintiff on cross-examination was asked what she would take for her property now, and she answered that she was unable to separate the damages from the value of the property— that she had been damaged a great deal. It was then stated to her that she had testified to the amount of damages as an expert, and she was asked to state the value of the property as it stood, and she answered she could not say how much she would take for it, which question was repeated and the witness failed and refused to answer it, and the court being moved to compel her to answer refused to do so, and it is claimed that it was error not to compel her to answer under these circumstances, she having tendered herself as an expert and the court having ruled that she had qualified, and she having testified assessing her own damages. She had just stated that she could not separate the damages from the value of the property, and if this was true, she could not otherwise answer the question, and the court could not with propriety command her to answer further.

The 83d, 84th, 85th and 86th assignments are grouped and under them complaint is made that the charge submits the value of the property before and after the obstructions to plaintiff's access, instead of the market values. The rule is, and is generally understood and expressed as being, the difference in the values before and after. Gulf, C. & S. F. Ry. v. Hepner, 83 Texas, 141; Ft. Worth & R. G. Ry. v. Downie, 82 Texas, 386. The rule more accurately expressed is the difference in market value. We are inclined to think the failure to use the expression "market value" was a matter of omission on account of generality, and if not satisfactory to appellant, should have been made the subject of a special request. In only one of the many special charges asked, the 17th, is the matter adverted to, but this special instruction dealt more particularly with other questions and was properly refused because not correct on other questions. In Cowan v. Brett, 43 Texas Civ. App., 569 (97 S. W., 330), it was held that a desired instruction is not properly requested when contained only in a requested instruction which covers other propositions and is properly refused on other grounds. In our opinion a special charge, in order to require elaboration of a general instruction, should be addressed to the trial court in such form that the particular request would be brought directly and unmistakably to its knowledge.

The 87th is not briefed sufficiently to merit consideration.

The 88th is overruled as plaintiff was not required to adjust her premises to the new conditions and overcome her damage instead of resorting to her remedy for damages. City of Ft. Worth v. Howard, 3 Texas Civ. App., 437 (22 S. W., 1060); Texas & P. Ry. v. Maddox, 26 Texas Civ. App., 297 (63 S. W., 134).

The 89th complains of this section of the charge: "If you believe that plaintiff's property was reduced in value by the grade and track and spur complained of, but believe that said construction at the same time operated, apart from and independent of the increase of value generally,

to increase the value of her property to an extent equal to the damage, that is, that her property is worth as much or more now, without reference to the increase in values in the city generally, as it would have been had the work complained of not been done, you will find for defendant." The use of the word *now* in this instruction is the complaint, the construction having been made several years previous to the trial, and the measure of damages being the difference in values then. The substance of the charge was: If you find that her property is worth as much, or more, now, *without considering the general increase in values*, as it would have been had the work not been done, you will find for defendant. The testimony all being to the effect that the values of property in the vicinity had constantly increased since and on account of this work, of which this was a part, it seems to us that the instruction was prejudicial to plaintiff rather than to defendant. If the work had not been done, plaintiff's property would not have been worth what it was at the date of the trial.

The 90th, 91st and 92d are grouped. They relate to different subjects, and the propositions under them present more than one question of law, and it is therefore not considered. A second proposition is "that the mere increase of operations does not give an additional action, and the court erred in not so charging on request." This case did not involve a mere increase of operations. Prior to 1905 it appears defendant had a single track along the street about the middle. The action involves the obstruction to access from the raising of the street and practically covering it with tracks, and the difference in value of the property with reference to the changed conditions concerning access. Hutcheson v. International & G. N. Ry. Co., 102 Texas, 471.

Under assignments 93 to 98 we have the proposition: "A plaintiff abutting owner can not select a portion of constructions made in a street as injurious, and prevent the offsetting of compensating advantages resulting from other constructions of defendant made at the same time." The theory of appellant is that this being a part of a general scheme of work for terminal arrangements or facilities in the neighborhood, including a depot, "all a unit and enacted at the same time," it was error to restrict the offsets and benefits conferred, to work done on Commerce Street and exclude the depot and other improvements off of Commerce Street. Plaintiff was not complaining, and had no right to complain, of the depot and other improvements as injuring access to her property. The placing of same in the neighborhood, naturally would improve the value of plaintiff's property, but this would be in common with all other property in the community. Under such circumstances, plaintiff's damages arising from the grading and trackage in contact with her place, are not affected by benefits of such nature. Her property would have had those benefits if the grading and tracks she complains of had been located somewhere else, and access to her property had not been affected at all. Pochila v. Calvert, W. & B. V.

Ry. Co., 31 Texas Civ. App., 398 (72 S. W., 255); Kirby v. Panhandle & G. Ry. Co., 39 Texas Civ. App., 252 (88 S. W., 281).

The complaint made by assignment 99 of the twelfth clause of the court's charge, is not justifiable. It did not, as we read the charge, exclude benefit to plaintiff's property if property on the same street was similarly benefited. The concluding part of the charge reads: "But you can offset against such damages, if any, only such benefits, if any you find there were, as were specially conferred or added to the value of plaintiff's property (in which the public did not participate) as resulted from the work done on Commerce Street of which the particular work of which plaintiff complains was a component material part."

The remainder of the assignments deal with the charge submitting limitations, which was: "In connection with the question of limitation you are instructed that if you believe from a preponderance of the evidence that plaintiff's property was damaged by reason of the acts or constructions complained of by her, and believe that all of said acts and constructions were done two years or more before July 17, 1907, the date this suit was filed, you will find for defendant; but if you believe that by certain of the acts and constructions complained of, if any, plaintiff was damaged, and that such damage did not accrue until less than two years before the filing of this suit, you will find for plaintiff for such damages as you so find accrued to her from such acts or constructions as caused damage less than two years before the filing of this suit." We conclude that under the evidence the charge was not erroneous. The work complained of was not completed and lacked substantial completion until within two years of the action, according to much of the testimony.

The complaint as to paragraph 5 of the charge is overruled, as nothing therein contained could have misled the jury in view of the specific submission of the issue of limitations by the charge above copied. Judgment affirmed.

ON MOTION FOR REHEARING.

The charge of the court, substantially stated, confined the jury to the matter of damage to plaintiff's property through the obstruction of access and egress, and excluded all other forms of damage. They were told that whether any damage was done, was for them to say. And to find for plaintiff for the reduction of value, if any, arising from said cause. The above was, unmistakably, to find for defendant if they found no reduction of value.

In addition the court gave the charge copied in the opinion in connection with the 89th assignment. This was an additional instruction and one in favor of the defendant, telling the jury that even if they found a reduction of value, they would nevertheless find for defendant under the circumstances it set forth. The said charge did not tell the jury to consult values at the time of the trial in determining whether or not a reduction in value had been caused, but told them what to do

after finding there had been a reduction in value, thereby giving defendant the benefit of certain conditions and of a verdict in its favor notwithstanding some original injury to the value of the property.

With this exception we think the opinion filed sufficiently discusses the questions referred to in the motion. Motion overruled.

*Affirmed.*

Writ of error refused.