SAN ANTONIO & A. P. RY. CO. v. CAR-PENTER et ux. (No. 8125.)

Court of Civil Appeals of Texas. San Antonio. Feb. 6, 1929.

Seabury, George & Taylor, of Brownsville, for appellant.

Rabel & Fristoe, of Harlingen, for appellees.

COBBS, J. W. T. Carpenter et ux. brought this suit against the defendant railway company for permanent damages to their home, occasioned by the construction of defendant's roadbed and switchyards very near the lots on which plaintiffs resided. Plaintiffs also sought temporary damages occasioned by the defendant temporarily stopping up his drain ditch and diverting the water, as alleged by plaintiffs, from its natural flow, and impounding it upon plaintiffs' lots, causing it to go under their house, from which cause the foundation settled, injuring the building. Plaintiffs further sued for damages for inconvenience and annoyance produced by noises, odors, smoke, cinders, etc., in the operation of defendant's trains.

The defendant pleaded general denial to all damages alleged. The court submitted the three issues pleaded to the jury in special questions, namely: The depreciation of the property occasioned by the construction of the switchyard; the injury to the house occasioned by the water standing under it and settling the foundation; and the issue of inconvenience and discomfort.

The jury gave plaintiffs $750 for permanent depreciation, $250 for the injury to the house occasioned by the water standing under it, but found for the defendant on the issue of discomfort and annoyance. On these findings the court rendered judgment for plaintiffs for $1,000; motion for a new trial was seasonably made and filed by defendant, but by the court overruled; defendant excepted and gave notice of appeal, filed its supersedeas bond, and the case is now before this court for review and correction.

■ Appellees predicated their cause of action on the diverting of the flow of water from the artificial drains, as well as the diverting of water from its natural flow. It is only necessary to submit a special issue covering a particular phase of the case where there is controverting evidence as to the same. There was no error in giving the definition No. 1, following issues Nos. 1 and 2, because said definition properly followed and defined the law applicable to this case, and, the court having given this definition in its main charge, it was not required to further elaborate on it.

■ The measure of damages for permanent injuries to land by the construction of a railroad near it is the difference between its market value immediately before construction and operation of the railroad and immediately thereafter.

■ Any uses to which property may be adapted immediately before and immediately after the construction of the railway line may be shown by the railway company under a plea of general denial. There was evidence introduced to the effect that appellees could diminish their injury by constructing a spur to their property, but it was not error for the court to instruct the jury that appellees were not required to construct a spur track to diminish their damages. When there is evidence that the construction of the railroad would benefit the community in general, it is not error for the court to instruct the jury that it should not take same into consideration in determining the injury to appellees' property.

■ Where there is no evidence to the effect that benefits inured to appellees' property, and that it received peculiar benefits by reason of the construction by appellant of its railway line, it is not error for the court to refuse to instruct the jury that it might consider any peculiar benefits.

■ In a suit for damages growing out of permanent injuries to real estate, but one recovery may be had for the injury inflicted, and in arriving at the amount of the depreciation caused by the injury complained of in plaintiff's petition it is proper to take into consideration all the elements entering into the cause of depreciation. All elements causing depreciation in the value of the land may be considered, including the probable or contemplated increase of operation, though the measure of the damages is the difference between the value of the land before and after the construction and operation of the railroad.

■ The court did not err in submitting to the jury special issue No. 3, because, if appellant diverted the flow of water, causing the overflow and the impounding of water on the premises of appellees by reason of its negligence, it would be liable for consequent damages, whether the water was diverted from its natural flow, or diverted from its artificial flow. Of course, this rule would not apply to the general flow of surface water that had no channel. In this case the jury found that the appellant negligently diverted the water from its natural channel, thereby causing the same to overflow on and be impounded on appellees' property; a case for consequent injury, whether the water was diverted from the natural flow, or diverted from an artificial drainage.

■ It was not error for the trial court to refuse to give any definition as to reasonable market value, since the trial court did instruct the jury under appropriate special issues and definitions as to the correct measure of damages for the injury complained of in plaintiffs' petition. It was not necessary to further elaborate on the same.

■ There was no evidence introduced upon

the trial from which it could be inferred that the depreciation of the value of the property was caused by anything other than the construction of appellant's railroad line. Where there is no controverting evidence introduced raising an issue, it is improper to submit the same to the jury for any finding at all. The evidence conclusively shows that the injury complained of was caused by the construction by defendant of its railway lines, and the trial-court so found. We see no error in this finding. It is only necessary to submit a special issue to the jury, covering a particular phase of a case, where there is controverting evidence as to same. The witnesses all testified that the depreciation of the value of the property was brought about by the construction of defendant's railway lines. Articles 2189, 2190, Revised Statutes 1925; Foos Gas Engine Co. v. Fairview Land & Cattle Co. (Tex. Civ. App.) 185 S. W. 382; House v. Robertson, 89 Tex. 681, 36 S. W. 251; Lasater v. Lopez (Tex. Civ. App.) 202 S. W. 1039; Patton v. Rucker, 29 Tex. 406; Schaff v. Scoggin (Tex. Civ. App.) 202 S. W. 758.

In appellant's proposition No. 2 it complains of the definition given by the trial court, following issues Nos. 1 and 2, and that definition is as follows: "In determining such values you are instructed to take into consideration all uses to which it may be applied, and all uses to which it was adapted, immediately after the construction of such roadbeds, main line, and tracks." We think that definition correctly defines the law applicable to this case, and the proposition is overruled. Houston Belt & Terminal R. Co. v. Wilson (Tex. Civ App.) 165 S. W. 560.

The charge was objected to in the trial court because it did not instruct the jury to consider, not only those uses of the property presently accruing, but those which might in a reasonable probability occur in the future. This phase of the case was sufficiently covered in the main charge, and we see no error in the action of the court.

The definition complained of in appellant's third proposition, in which the court instructed the jury not to take into consideration, in estimating such values, any remote or possible uses to which said property may be put or to which it may be adapted, which are contingent upon some happening or future possibility, is not error, but is the law as defined by the above authority, because any uses to which property may be adapted immediately before and immediately after the construction of the railway lines may be shown by the railway company under plea of general denial. Appellant having introduced evidence to the effect that appellees could diminish their injury by constructing a spur track to their property, it was not error for the court to instruct the jury that appellees were not required to construct a spur track to diminish their damages.

It was shown that the property is adapted for trackage purposes, and could be made available therefor, but the alley would have to be condemned. If a switch could be procured, and the property served with tracks, it would be all right but not as it is now. Owners are not required to adjust their premises to any new conditions to overcome their damages, if any.

In its sixth proposition appellant complains of the following instruction, in which there is no error: "In estimating said damages, if any, you will not take into consideration the benefits, if any, inuring to the community in general." This is elementary, and settled in the following authorities: Articles 2189, 2190, Revised Statutes, 1925; International & G. N. R. Co. v. Bell, 62 Tex. Civ. App. 117, 130 S. W. 634; Routh et al. v. Texas Traction Co. (Tex. Civ. App.) 148 S. W. 1152. There was no evidence to the effect that the property of appellees received any special benefits, so any instruction covering that phase of the case would be improper.

We must not lose sight of the fact, in determining the amount of damages from injury to realty by construction of a railroad adjacent thereto, all elements causing depreciation in the value of the land may be considered, including the probable or contemplated increase of operation, though the measure of the damages is the difference between the value of the land before and after the construction and operation of the railroad.

The court did not err in submitting to the jury special issue No. 3, because, if appellant diverted the flow of the water, thereby causing the overflow and the impounding of water on the premises of appellees, by reason of its negligence, it would be liable for consequent damages, whether the water was diverted from its natural flow, or diverted from its artificial flow. Plaintiffs in their petition did not predicate their cause of action solely on the proposition of the diverting of water from its natural flow. In addition to the allegation in the petition as to the natural flow of the water, plaintiffs also allege that defendant diverted the water from the channel through which it flowed.

We have very carefully gone into and carefully considered every assignment or proposition or point of error complained of, and have reached the conclusion that the court properly charged the jury, and properly refused appellant's assignments and requests for additional issues.

No error is shown that should cause a reversal, and the judgment is affirmed.